UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

TINA ESPERANZA, REIGGE EDWARD,　　　　:
ASHA ASHARAFAN, and LESLY BRIGGS,　　　:

　　　　　　　　　　　　　　　　　　　:

　　　　　　　　　　　　Plaintiffs,　　　:

　　　　　　　　　　　　　　　　　　　:

　　　　　　v.　　　　　　　　　　　　:　　**DECISION & ORDER**
　　　　　　　　　　　　　　　　　　　:　　15-CV-2612 (WFK) (PK)
THE CITY OF NEW YORK; POLICE OFFICER　:
NINA MCKENZIE, Shield No. 25366; POLICE　:
OFFICER LAZO LLUKA, Shield No. 22410;　　:
POLICE OFFICER TAISHA SKYERS-ANDERSON,　:
Shield No. 19146; SERGEANT ALFRED KELLEY,　:
Shield No. 01974; POLICE OFFICER ROBERT　　:
SCHMIDT, Shield No. 28045; and POLICE OFFICERS　:
JOHN/JANE DOES 1-10,　　　　　　　　　　:

　　　　　　　　　　　　　　　　　　　:

　　　　　　　　　　　　Defendants.　　　:

-------------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

Tina Esperanza, Reigge Edward, Asha Asharafan, and Lesly Briggs (collectively, "Plaintiffs")
bring this action pursuant to 42 U.S.C. § 1983 and New York law against the City of New York
(the "City"); New York City Police Department ("NYPD") Officers Nina McKenzie, Lazo Lluka,
Taisha Skyers-Anderson, Robert Schmidt, and Sergeant Alfred Kelley (together, the "Individual
Defendants"); and John/Jane Does 1-10.[1] Plaintiffs seek damages for alleged violations of their
constitutional rights guaranteed by the Fourth, Fifth, Sixth, and Fourteenth Amendments of the
United States Constitution, specifically as claims for (1) false arrest; (2) excessive force; (3)
excessive pre-arraignment detention; (4) failure to intervene; and (5) violation of due process, all
under 42 U.S.C. § 1983. Plaintiffs also allege violations under New York law for (1) false arrest;
(2) assault and battery; and (3) pre-arraignment delay, and (4) municipality liability for the City,
pursuant to *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978), and under

---

[1] As an initial matter, this Court dismisses the claims against the unnamed John/Jane Doe defendants. Plaintiffs
have had ample opportunity throughout the course of discovery to identify the John and Jane Doe defendants, yet
have failed to do so. Moreover, Plaintiffs have not suggested that there is any likelihood the unnamed parties will
eventually be identified. "[W]here 'plaintiff [had] an opportunity to pursue discovery to identify the unknown
defendants' but failed to do so, this Court adheres to the 'general rule' that disfavors the use of 'John Doe' to
identify a defendant." *Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Mgmt., Inc.*, 04-CV-2293,
2007 WL 74304, at *5 n.7 (E.D.N.Y. Jan. 8, 2007) (Bianco, J.) (quoting *Feliciano v. Cty. of Suffolk*, 419 F. Supp. 2d
302, 313 (E.D.N.Y. 2005) (Seybert, J.); *accord Murphy v. Goord*, 445 F. Supp. 2d 261, 266 (W.D.N.Y. 2006)
(Larimer, J.); *see also Kemper Ins. Cos., Inc. v. Federal Exp. Corp.*, 115 F. Supp. 2d 116, 125 (D. Mass. 2000)
("[F]ictitious parties must eventually be dismissed, if discovery yields no identities." (citations omitted)), *aff'd*, 252
F.3d 509 (1st Cir. 2001), *cert. denied*, 534 U.S. 1020 (2001). As such, any claims against the unnamed defendants
are hereby dismissed without prejudice.

the common law doctrine of *respondeat superior*. Defendants now move under Rule 56 of the Federal Rules of Civil Procedure for summary judgment as to all claims asserted against them. For the reasons stated below, Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND AND PROCEDURAL HISTORY

The following facts, drawn from the parties' Local Rule 56.1 Statements, declarations, deposition testimony, and other evidence submitted in support of the motion, are undisputed or described in the light most favorable to Plaintiffs, the non-moving party. Fed. R. Civ. P. 56(c); *Capobianco v. City of New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2005).[2]

## I.     Relevant Background

Purchase of the 1992 Honda Civic

In January 2014, Tina Esperanza and her husband Reigge Edward purchased a 1992 Honda Civic for $1,500.00 in New Jersey, from a seller they met on Craigslist. Defs.' Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 ("Defs.' Facts") ¶ 1, ECF No. 69. After Esperanza paid for the vehicle and acquired ownership of it, she and Edward discovered that the vehicle was not operating. *Id.* ¶¶ 2, 11. Although Plaintiffs refute the assertion that Edward also had ownership of the vehicle, *see* Pls.' Resp. to Defs.' 56.1 Statement ("Pls.' Facts") ¶¶ 2, 12, ECF No. 74, the allegations regarding the ownership of the vehicle in the Second Amended Complaint ("SAC") ¶¶ 83-90, ECF No. 23, and in deposition testimony of both Edward and Esperanza, *see* Defs. Facts ¶¶ 2, 12-13, contest that assertion.

To move the non-operational vehicle to Brooklyn, New York, where they lived, Esperanza and Edward had the vehicle towed to a parking spot in front of their apartment building at 1184 President Street (the "Building"). Defs. Facts ¶¶ 3-4. Between January 2014

---

[2] Citations to a party's Rule 56.1 statement and memorandum incorporate by reference the documents cited therein. The Court takes to be true facts stated in a party's Rule 56.1 statement supported by testimonial or documentary evidence and denied by the other party with only a conclusory statement without citation to conflicting testimonial or documentary evidence. See E.D.N.Y. Local Rule 56.1(c), (d).

and May 7, 2014, the vehicle was not registered with the New York State Department of Motor Vehicles, had not been inspected and lacked a valid certificate of inspection displayed on the vehicle, and had no license plates. *Id.* ¶¶ 5-7.

Edward's Arrest on May 7, 2014

On May 7, 2014, at approximately 12:00 Noon, Edward changed the engine mounts on the Honda Civic while it was parked in front of the Building, which required lifting the engine with a mechanical jack. *Id.* ¶¶ 8-9; Pls.' Mem. in Opp'n to Defs.' Mot. for Summ. J. ("Pls. Opp'n") at 3, ECF No. 76. Later that day, at approximately 3:00 P.M., Edward went inside his house to retrieve a car battery. Pls. Opp'n at 3. When he returned, Edward encountered Officers Taisha Skyers-Anderson, Lazo Lluka, and Robert Schmidt, who were in uniform and on patrol. *Id.*; Defs.' Mem. in Supp. of Mot. for Summ. J. ("Defs. Memo") at 2, ECF No. 71. The officers noticed that the Vehicle Identification Number ("VIN") on the dashboard was covered by a rag and, upon further investigation, determined it did not match the other VINs on the car. Defs. Memo at 2; Defs. Facts ¶ 10. The officers then learned the car was not registered. Defs. Memo at 2. The officers asked Edward who owned the vehicle, and Edward answered that he did. Pls. Opp'n at 3. Upon the officers' request, Edward produced the title to the vehicle. *Id.* The officers did not attempt to issue a summons or ticket at any time, and a decision was made to arrest Edward for multiple offenses. *Id.*; Defs. Memo at 2.

Thereafter, the officers informed Edward that he was going to be arrested and asked if there was someone who could watch his two children, who were also in front of the Building, together with Lesley Briggs, Esperanza's brother, and non-party Morad Miah, Esperanza's cousin. Defs. Memo at 2-3; Pls. Opp'n at 3. After Edward stated there was no one with whom he could leave the children, the officers threatened to call the Administration of Children's

3

Services ("ACS") if Edward did not find someone to take care of the children. Defs. Memo at 3; Pls. Opp'n. at 43-4. Edward then called his wife Esperanza and explained that she had to come home right away because he was about to be arrested and police officers were threatening to call ACS. Defs. Memo at 3; Pls. Opp'n at 43-4.

According to Edward, after the call, he "got into a little argument" with one of the officers who then "went to grab [him], to toss [him] down on the floor"; Edward objected verbally to being thrown but did not resist. Defs. Memo at 3; Pls. Opp'n at 4. Edward suffered "a couple of scrapes . . . [that] went away in a few days." Defs. Memo at 21. Officer Lluka is the only defendant who is accused of using physical force against Edward during this altercation. Defs. Facts ¶ 19. Edward then asked Briggs to take the children into the house. Pls. Opp'n at 4. Thereafter, the officers placed Edward in handcuffs, and the officers' supervisor Sergeant Alfred Kelley came to the scene and verified the arrest. Defs. Memo at 3; Pls. Opp'n at 4. Edward was released after spending approximately 27.5 hours in custody. Defs. Facts. ¶ 17. Edward was charged with Improper Display of Number Plates, N.Y. Veh. & Traf. Law § 402(1), and Parking for Certain Purposes Prohibited, N.Y. Traf. R. § 4-08(n)(2). Pls. Opp'n at 5. The charges against Edward were dismissed on November 7, 2014. *Id.*

Events Following Edward's Arrest

Meanwhile, upon receiving the call from her husband, Esperanza left her job and returned home, arriving there after Edward's arrest. Defs. Memo at 4; Pls. Opp'n at 5. By this time, a crowd had gathered on President Street. Defs. Memo at 4-5. According to Esperanza, Skyers first said to her, "[i]f you are looking for the female who called ACS on your kids, I am the female," and Esperanza approached Skyers "in a pleasant manner" and conversed with her. Pls. Opp'n at 5. Esperanza asked Skyers why she had called ACS, explaining that she did not neglect

4

her children and worked hard to support them and did not understand why Skyers had called ACS. *Id.* Skyers, on the other hand, recalls Esperanza yelling, "[w]here's the bitch that said she's going to call ACS?" after which "someone pointed [Skyers] out," and an argument ensued. *Id.*; Defs. Memo at 5. Officer Lluka then allegedly, unprovoked, grabbed Esperanza, lifted her up, slammed her face against the hood of a police car, and attempted to place Esperanza in handcuffs. Pls. Opp'n at 6. All three officers present denied observing Esperanza take any physical action against the officers. *Id.* at 18. Defendants contend that when Lluka used forced against Esperanza, he was trying to place her under arrest; Plaintiffs deny that Lluka intended to effect a lawful arrest, but admit Esperanza resisted the seizure. Defs. Facts ¶ 21; Pls. Facts ¶¶ 21-22. Officer Lluka is the only defendant accused of using physical force against Esperanza during this encounter. Defs. Facts ¶ 20. Esperanza was released at the scene. Pls. Memo at 7. As a result of this incident, Esperanza suffered severe bruising and was admitted to the emergency room at New York Methodist Hospital, where, as supported by hospital records, she was diagnosed with an ankle strain, thigh contusion, and pain and swelling of her leg. *Id.*

When Lesley Briggs witnessed Lluka use force against his sister, he came to her aid. Defs. Facts ¶ 23. However, Briggs was grabbed from behind by two officers and struggled with them, during which his leg became caught in the bumper of the police car, twisting his leg. Defs. Memo at 5; Pls. Opp'n at 9. Plaintiffs admit none of the Individual Defendants arrested Briggs or used physical force against him during this encounter. Pls. Facts ¶¶ 24-25. Although the Plaintiffs assert the Individual Defendants "failed to intervene," *id.*, Briggs has admitted none of the Individual Defendants were in a position to prevent the alleged use of force against him, Defs. Facts ¶ 26. Briggs was also released at the scene. Pls. Opp'n at 9. Briggs was transported by ambulance to Kings County Hospital, where he was diagnosed with an abrasion of his left

calf, after which Briggs required crutches to walk. *Id.* Briggs testified he was unable to work for approximately two weeks and still experiences pain in his left calf over two years after the incident. *Id.*

Asha Asharafan, Esperanza's cousin, also observed Esperanza's encounter with Lluka, and reached out instinctively. Defs. Memo at 6; Pls. Opp'n at 8. Plaintiffs state the only physical contact Asharafan made was her hand brushing either Esperanza or Lluka's arm, Pls. Opp'n at 8; Defendants contend Asharafan kicked either or both Lluka or Skyers-Anderson, Defs. Memo at 18. In response to the contact, Asharafan was arrested, at approximately 4:55 P.M., and was held in custody for approximately 25.5 hours. Defs. Facts ¶¶ 15, 18; Pls. Opp'n at 8. Asharafan was charged with Resisting Arrest, N.Y. Penal Law § 205.30, and Disorderly Conduct, N.Y. Penal Law § 240.20(1). Pls. Opp'n at 8. The charges against Asharafan were dismissed on November 7, 2014. *Id.*

Seizure of the 1992 Honda Civic

Later, Defendants towed the Honda Civic to the 71st Precinct. Pls. Opp'n at 10. According to Plaintiffs, at the time it was towed, the Civic contained a set of tools belonging to Edward, worth approximately $250.00. *Id.* At a later date, Edward and Esperanza attempted to recover the car, and were told they needed a title and certificate of disposition. *Id.* Edward obtained the certificate of disposition, but was unable to present the title at the Precinct because it had been confiscated during the arrest and vouchered with the Honda Civic. *Id.* Edward testified he never received a property voucher for the title. *Id.* In the course of this litigation, Defendants produced during discovery a "Vehicle Seizure Form," ostensibly advising Edward of his right to a hearing. Edward denied having ever seen the form and noted it states his name incorrectly, as "Reiggie Edwards." *Id.* at 11. Defendants also produced Property Clerk Invoices,

reflect a litigation hold on the Honda Civic on June 10, 2016, approximately 14 months after the

initiation of this litigation. *Id.* To date, Edward has been unable to recover the Honda Civic. *Id.*

Other than this lawsuit, Edward and Esperanza have filed no civil or administrative action

seeking either the return of, or compensation for, the Honda Civic and the contents contained

therein. Defs. Facts ¶ 31.

## II.    Procedural History

Plaintiff commenced this action on May 6, 2015, ECF No. 1, and filed the SAC on March

31, 2016. The SAC purports to set forth nine claims against Defendants: (1) false arrest; (2)

excessive force; (3) excessive pre-arraignment detention; (4) failure to intervene; and (5)

violation of due process, all under 42 U.S.C. § 1983, (6) false arrest; (7) assault and battery; and

(8) pre-arraignment delay, under New York law, and (9) derivative liability for the City, under

the common law doctrine of *respondeat superior.* SAC ¶¶ 31-107. Plaintiffs also allege

municipal liability for the City for failing to train and supervise its officers and making and

enforcing the policies and practices under which the Individual Defendants caused the alleged

violations, ostensibly under *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658

(1978). *Id.* ¶¶ 13, 34-36, 57-59, 67-69, 99-101.

Defendants now move under Rule 56 of the Federal Rules of Civil Procedure for

summary judgment as to all claims asserted against them. In Plaintiffs' opposition to

Defendants' motion, Plaintiffs consent to the dismissal of defendant Officer Nina McKenzie

from the case. Pls. Opp'n at 29. Therefore, the Court dismisses all claims against Officer

McKenzie. Furthermore, Plaintiffs' opposition begins with an explicit list of the causes of action

for which they oppose summary judgment. Pls. Opp'n at 1. Plaintiffs, by failing to offer any

opposition to the claims other than the ones expressly listed, thereby abandon the remainder of

their claims. *Jackson v. Fed. Express*, 766 F.3d 189, 195 (2d Cir. 2014) ("[A] partial response arguing that summary judgment should be denied as to some claims while not mentioning others may be deemed an abandonment of the unmentioned claims."); *Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) (Glasser, J.) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." (citing *Douglas v. Victor Capital Grp.*, 21 F. Supp. 2d 379, 393 (S.D.N.Y. 1998) (Stein, J.)). Specifically, the Court finds abandoned and dismisses: (1) any claim for false arrest by Edward; (2) any claim for excessive force by Edward; and (3) Esperanza's due process claim relating to the seizure of the Honda Civic. *See* Pls. Opp'n at 1.

The Court now turns to the remaining claims: (1) false arrest under § 1983 and state law with respect to Esperanza, Briggs, and Asharafan; (2) excessive force under § 1983 with respect to Esperanza and Briggs; (3) assault and battery under state law with respect to Edward, Esperanza, and Briggs; (4) excessive pre-arraignment detention or delay under § 1983 and state law with respect to Edward and Asharafan; (5) failure to intervene under § 1983 with respect to all four plaintiffs; (6) violation of due process under § 1983 with respect to Edward; and (7) municipal liability against the City under § 1983 and state law.[3]

---

[3] In their opposition papers, Plaintiffs seek to assert an additional claim by Edward for an illegal strip search not included in their pleading. Pls. Opp'n at 36-38. Plaintiffs ask the Court to consider the claim "on the merits," *id.* at 36, despite the fact that the Court previously denied "leave to amend the Complaint to add a strip search claim by Plaintiff Edward." Order dated June 30, 2016. Plaintiffs cite *Cruz v. Coach Stores, Inc.*, 202 F.3d 560 (2d Cir. 2000), as support to allow them to proceed on the merits with an un-pleaded claim. Pls. Opp'n at 36. However, in that case, the Circuit found that although the plaintiff's claim could have been "more artfully" stated, "the essential elements of the charge [did] appear in the complaint." *Cruz*, 202 F.3d at 569. In contrast, here, Plaintiffs admit the strip search claim is not in any iteration of their complaint, and while they did seek leave to amend for a third time to include the claim, that request was denied. *See* Pls. Opp'n at 37. "That decision is thus the law of the case," *United States v. Crowley*, 318 F.3d 401, 420 (2d Cir. 2003), and this Court will not revisit it. *See also Nairobi Holdings Ltd. v. Brown Bros. Harriman & Co.*, 02-CV-1230, 2006 WL 617977, at *3 (S.D.N.Y. Mar. 10, 2006) (Katz, M.J.) ("When a court rules on an issue, that decision should generally be adhered to in subsequent stages of the same action, unless cogent or compelling reasons militate otherwise." (citations omitted)), *aff'd*, 02-CV-1230, 2006 WL 2242596 (S.D.N.Y. Aug. 3, 2006) (McKenna, J.).

## LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" by citation to materials in the record, including depositions, affidavits, declarations, and electronically stored information. Fed. R. Civ. P. 56(a)-(c). Affidavits and declarations, whether supporting or opposing a summary judgment motion, "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Id.*; *see also Patterson v. Cty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004).

"In determining whether summary judgment is appropriate, [the] Court will construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (citation and internal quotation marks omitted). The role of the district court is not to weigh the evidence and determine the truth of the matter, but rather to answer "the threshold inquiry of determining whether there is the need for a trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). The Court must therefore review whether the record could "lead a rational trier of fact to find for the non-moving party." *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

If the moving party carries its preliminary burden, the burden shifts to the non-movant to raise the existence of "specific facts showing that there is a genuine issue for trial." *Cityspec, Inc. v. Smith*, 617 F. Supp. 2d 161, 168 (E.D.N.Y. 2009) (Wexler, J.) (quoting *Matsushita*, 475 U.S. at 586). "The mere existence of a scintilla of evidence" in support of the non-movant will be insufficient to defeat a summary judgment motion. *Anderson*, 477 U.S. at 252. Rather, the

non-moving party must make a showing sufficient to establish the existence of each element

constituting its case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) ("[A] complete

failure of proof concerning an essential element of the nonmoving party's case necessarily

renders all other facts immaterial."). Conclusory statements, devoid of specifics, are insufficient

to defeat a properly supported motion for summary judgment. *See Bickerstaff v. Vassar Coll.*,

196 F.3d 435, 452 (2d Cir. 1999); *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).

## DISCUSSION

### I.      False Arrest (First and Second Causes of Action)

All four plaintiffs assert claims for false arrest under § 1983 and New York law.

However, as noted above, the Court deems any false arrest claim by Edward to be abandoned.

With respect to the remaining § 1983 and state law false arrest claims, this Court denies

Defendants' motion for summary judgment as to Esperanza's and Asharafan's claims, and grants

Defendants' motion as to Briggs' claims.

### A.      Applicable Law`

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual

to be free from unreasonable seizures, including arrest without probable cause . . . is substantially

the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852

(2d Cir. 1996) (citations omitted); *Folk v. City of New York*, 243 F. Supp. 3d 363, 371 (E.D.N.Y.

2017) (Kuntz, J.). Under New York law, a plaintiff alleging false arrest must show: (1) "the

defendant intended to confine" the plaintiff; (2) "the plaintiff was conscious of the confinement";

(3) "the plaintiff did not consent to the confinement"; and (4) "the confinement was not

otherwise privileged." *Broughton v. State*, 335 N.E.2d 310, 314 (N.Y. 1975); *Folk*, 243 F. Supp.

3d at 371. An arrest is privileged if it was "based on probable cause." *Savino v. City of New*

*York*, 331 F.3d 63, 76 (2d Cir. 2003) (quoting *Broughton*, 335 N.E.2d at 315). Accordingly,

"[t]he existence of probable cause to arrest constitutes justification and is a complete defense to

an action for false arrest, whether that action is brought under state law or under § 1983."

*Weyant*, 101 F.3d at 852 (citations and quotation marks omitted); *Jenkins v. City of New York*,

478 F.3d 76, 84 (2d Cir. 2007).

    "In general, probable cause to arrest exists when the officers have knowledge or

reasonably trustworthy information of facts and circumstances that are sufficient to warrant a

person of reasonable caution in the belief that the person to be arrested has committed or is

committing a crime." *Weyant*, 101 F.3d at 852 (citations omitted); *United States v. Fisher*, 702

F.2d 372, 375 (2d Cir. 1983) (citations omitted). "Whether probable cause exists depends upon

the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of

the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (citing *Maryland v. Pringle*, 540 U.S.

366, 371 (2003)). The arresting officer "need only possess enough information to convince a

reasonable person that the arrestee committed an offense, and if he does, then he is immune from

a subsequent claim of false arrest." *Brown v. City of New York*, 201 F. Supp. 3d 328, 331

(E.D.N.Y. 2016) (Glasser, J.) (citations omitted).

    Where officers arrested a plaintiff without a warrant and without probable cause, the

doctrine of qualified immunity, which shields government officials performing discretionary

functions "from liability for civil damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known,"

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), raises the question of whether it was objectively

reasonable for the officers to believe they did have probable cause. *See Jenkins*, 478 F.3d at 87.

"An officer's determination is objectively reasonable if there was 'arguable' probable cause at

the time of arrest—that is, if 'officers of reasonable competence could disagree on whether the probable cause test was met.'" *Id.* (quoting *Lennon v. Miller*, 66 F.3d 416, 423-24 (2d Cir. 1995). "Arguable probable cause exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well established law." *Cerrone v. Brown*, 246 F.3d 194, 202-03 (2d Cir. 2001) (quotation marks and citation omitted). Similar immunities also shield police officers from claims asserted under New York state law. *See, e.g., Jones v. Parmley*, 465 F.3d 46, 63 (2d Cir. 2006) ("New York Law . . . grant[s] government officials qualified immunity on state-law claims except where the officials' actions are undertaken in bad faith or without a reasonable basis." (citations omitted)).

**B.  Analysis**

1.  Plaintiff Esperanza

Defendants argue that Esperanza was never arrested because "no one ever succeeded in putting her in handcuffs and taking her away." Defs. Memo at 15. Further, Defendants aver that even if Esperanza could establish she had actually been arrested, the officers had probable cause, or at least arguable probable cause, for her arrest, for the same violations for which Edward had been arrested and for "acting disorderly, cursing, and causing a scene." *Id.* at 16-17. In the absence of a formal charge, a person may still be "seized" within the meaning of the Fourth Amendment, and therefore have a basis for a false arrest claim, where "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). Esperanza's false arrest claim rests on whether she was "seized" within the meaning of the Fourth Amendment, when

Officer Lluka allegedly grabbed and slammed her against the hood of a police car, and if so, whether there was probable cause for the seizure.

"The issue of precisely when an arrest takes place is a question of fact." *Posr v. Doherty*, 944 F.2d 91, 99 (2d Cir. 1991) (citation omitted). Defendants cite to evidence suggesting Esperanza was not seized and was free to leave because she was "fighting her way out" and eventually "broke free." Defs. Memo at 15. However, Defendants disregard Esperanza's own testimony, in which she stated her belief she was being arrested at the time and begged the officers to explain why. *See* Pls. Memo at 16. The evidence, construed in the light most favorable to Plaintiffs, indicates Lluka used physical force in an intrusive way to restrain Esperanza's liberty, although, ultimately, Lluka was unsuccessful. Thus, a reasonable jury could find that an arrest had occurred at that point. *See California v. Hodari D.*, 499 U.S. 621, 626 (1991) ("The word 'seizure' readily bears the meaning of a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful."); *Sibron v. New York*, 392 U.S. 40, 67 (1968) (an arrest occurred when a policeman "seized" the suspect and curtailed his movement by grabbing his collar).

Turning to the question of probable cause, as discussed above, the existence of probable cause depends on the facts and circumstances actually known to officers at the time of the arrest. *Devenpeck*, 543 U.S. at 152; *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006). Here, there is no evidence to suggest that the officers had information relating to Esperanza's ownership of the Honda Civic, and that this issue was raised or investigated after Edward admitted ownership and produced title to the car. With these facts, the violations related to the vehicle for which Edward was arrested failed to provide the basis for probable cause to arrest Esperanza.

Defendants, without citing a single case in support of their argument, nor citing any statute or regulation that Esperanza was allegedly violating, claim that at least arguable probable cause existed to arrest Esperanza for her apparent disorderly conduct. Facts surrounding the encounter between Esperanza and Skyers-Anderson are disputed. Even taking Defendants at their word—that Esperanza was yelling and cursing at Skyers-Anderson—the facts alleged do not establish probable cause to arrest Esperanza because, as the Supreme Court has consistently recognized, "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *City of Houston v. Hill*, 482 U.S. 451, 461-65 (1987) (citing cases where the Supreme Court has "repeatedly invalidated laws that provide the police with unfettered discretion to arrest individuals for words or conduct that annoy or offend them"). Defendants have not alleged Esperanza took any physical action against the officers requiring her restraint. A reasonable jury could, therefore, conclude Esperanza was arrested—albeit briefly—without probable cause. The Court denies Defendants' motion for summary judgment as to Esperanza's false arrest claims.

    2.    <u>Plaintiff Briggs</u>

Unlike Esperanza's claims for false arrest, Briggs' claims must fail by his own admissions. Briggs admits none of the named defendants arrested him or used force against him. Therefore, Individual Defendants are entitled to summary judgment on the false arrest claims brought by Briggs under § 1983 and New York law, and the Court need not consider whether Briggs' interaction with police officers on May 7, 2014 amounted to an arrest or whether probable cause existed to arrest him.

14

### 3. Plaintiff Asharafan

In contrast to Esperanza and Briggs, Asharafan was arrested in the formal sense and taken into custody. She was charged with violations of Resisting Arrest, N.Y. Penal Law § 205.30, and Disorderly Conduct, N.Y. Penal Law § 240.20(1).

Pursuant to N.Y. Penal Law § 205.30, "[a] person is guilty of resisting arrest when he intentionally prevents or attempts to prevent a police officer . . . from effecting an authorized arrest of himself or another person." N.Y. Penal Law § 205.30; *see also Curry v. City of Syracuse*, 316 F.3d 324, 336 (2d Cir. 2003) ("There are . . . at least two essential elements of a charge for resisting arrest under New York law: (1) the person charged must have intentionally attempted to prevent the arrest of himself or someone else, and (2) the arrest he attempted to prevent must itself have been supported by a warrant or by probable cause."); *Weyant*, 101 F.3d at 855 ("Under New York law, an essential element of the offense of resisting arrest is that the arrest allegedly resisted was 'authorized.'") (citing N.Y. Penal Law § 205.30)). As discussed *supra*, a reasonable jury could find that the arrest Asharafan was charged with attempting to thwart—Esperanza's arrest—was not supported by probable cause, and, by extension, Asharafan's arrest for resisting arrest was not proper.

With respect to Asharafan's charge for disorderly conduct, New York law provides, in relevant part, "[a] person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof . . . [she] engages in fighting or in violent, tumultuous or threatening behavior." N.Y. Penal Law § 240.20(1). "This section was meant to proscribe disorderly behavior that is 'of public rather than individual dimension,' and it is limited to 'situations that carried beyond the concern of individual disputants to a point w[h]ere they had become a potential or immediate public problem.'"

*Weyant*, 101 F.3d at 855 (citing *People v. Munafo*, 50 N.Y.2d 326, 331 (1980)).  Here, there are genuine factual disputes as to what physical contact, if any, Asharafan had with the officers at the scene.  Even taking Defendants at their word, the facts raise the question of whether any disturbance caused by Asharafan rose to the level of a "public" problem.

Accordingly, because the Court finds there are questions of material fact as to whether probable cause existed to arrest Asharafan for resisting arrest and disorderly conduct, the Court denies summary judgment on the false arrest claims as to Asharafan.

## II.       Excessive Force and Assault and Battery (Third and Sixth Causes of Action)

As noted previously, the Court deems any claim for excessive force by Edward to be abandoned, but will consider Edward's claim for assault and battery under state law.  Esperanza and Briggs bring claims for excessive force under § 1983 and for assault and battery under New York law.  Asharafan is not asserting any claim for excessive force or assault and battery.  *See* Defs. Memo at 19 n.10.  For the reasons stated below the Court denies Defendants' motion for summary judgment with respect to Edward's state law claim for assault and battery against Lluka, and Esperanza's claims against Lluka for excessive force under § 1983 and assault and battery under state law.  The Court grants Defendants' motion with respect to Briggs' claims.

### A.       Applicable Law

Excessive force claims brought under Section 1983 are "judged under the Fourth Amendment's 'objective reasonableness' standard." *Terranova v. New York*, 676 F.3d 305, 308 (2d Cir. 2012) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 197 (2004)).  The same is true for claims of assault and battery brought under New York law. *See, e.g.*, *Kramer v. City of New York*, 04-CV-106, 2004 WL 2429811, at *11 (S.D.N.Y. Nov. 1, 2004) (Baer, J.) ("In the context of state officers performing their lawful duties, New York State law regarding assault and battery

16

parallels the federal laws regarding excessive force." (citation omitted)). Under this standard, the determinative question is whether the officers' actions are "'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Spinelli v. City of New York*, 579 F.3d 160, 167 (2d Cir. 2009) (citation omitted). "Under the law, police are not permitted to use any degree of force in all instances—in some circumstances, no use of force is reasonable because none is required." *Weather v. City of Mount Vernon*, 08-CV-192, 2011 WL 1046165, at *9 (S.D.N.Y. Mar. 22, 2011) (Patterson, J.) (citation omitted), *aff'd*, 474 F. App'x 821 (2d Cir. 2012).

### B.    Analysis

#### 1.    Plaintiff Edward

Although Defendants argue officer Lluka was attempting to place Edward under arrest when he used force and Edward was resisting, *see* Defs. Memo at 21-22, these facts are disputed. According to Plaintiffs' version of the facts, there is no indication that Edward was actively trying to resist or to evade arrest, nor was he an immediate threat to the safety of the officers or others. Viewing the facts in the light most favorable to Edward, a reasonable jury could find the force allegedly used against Edward by defendant Lluka (grabbing and tossing Edward to the ground) was excessive in light of the factual circumstances, notwithstanding the very minor injuries Edward sustained ("a couple of scrapes"). *See Hayes v. N.Y.C. Police Dep't*, 212 F. App'x 60, 62 (2d Cir. 2007) ("[W]e have permitted claims to survive summary judgment where the only injury alleged is bruising." (citation omitted)); *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 123-24 (2d Cir. 2004) (distinguishing the kind of force that can be used in "the arrest of a nonviolent suspect" (citation omitted)); *Hayes v. Cty. of Sullivan*, 853 F. Supp. 2d 400, 432 (S.D.N.Y. 2012) (Karas, J.) ("Plaintiff need not show 'permanent or severe' injuries to

17

maintain an excessive force claim." (citations omitted)); *Lemmo v. City of New York*, 08-CV-2641, 2011 WL 4592785, at \*8 (E.D.N.Y. Sept. 30, 2011) (Dearie, J.) (noting that "a jury may consider the lack of serious injury as evidence that the implemented force was not excessive," however, a reasonable jury could still find that any use of force under the circumstances was inappropriate); *Davenport v. Cty. of Suffolk*, 09-CV-3088, 2007 WL 608125, at \*11 (E.D.N.Y. Feb. 23, 2007) (Bianco, J.) (holding that use of force that causes *de minimis* injury could be excessive force if "gratuitous"). The Court denies Defendants' motion as to Edward's assault and battery claim against Lluka.

### 2.    Plaintiff Esperanza

As with Edward, material issues of fact exist as to the level of force used by Lluka against Esperanza and the reasonableness of such force. Defendants argue the Court should dismiss Esperanza's excessive force and assault and battery claims because she fails to allege more than *de minimis* injury. However, it is not clear as a matter of law that any level of force against Esperanza was reasonable. Looking at the facts in the light most favorable to Esperanza, Lluka seized Esperanza and slammed her against a car without provocation. There is no allegation by any of the officers of any physical danger posed by Esperanza. Furthermore, there are genuine disputes of material facts as to whether Esperanza's arrest itself, which Lluka purportedly was intending to effect when seizing Esperanza, was justified by probable cause. Accordingly, Defendants' motion for summary judgment as to the excessive force and assault and battery claims brought by Esperanza against Lluka is denied.

### 3.    Plaintiff Briggs

Like Briggs' claims for false arrest, his claims for excessive force against the Individual Defendants also fail by his own admissions. As discussed above, Briggs admits none of the

named defendants arrested him or used force against him. The Court grants Defendants' motion for summary judgment on the excessive force and assault and battery claims brought by Briggs.

III. **Excessive Pre-Arraignment Detention or Delay (Eighth and Ninth Causes of Action)**

Plaintiffs Edward and Asharafan each claim they were subject to unreasonable pre-arraignment detention or delay under § 1983 and state law. For the reasons stated below, Defendants' motion for summary judgment as to all claims for excessive pre-arraignment detention or delay is granted, and Plaintiffs' Eighth and Ninth Causes of Action are dismissed.

A. **State Law Claims**

As an initial matter, Edward's and Asharafan's state claims for pre-arraignment delay under New York law fail as a matter of law.[4] The Second Circuit has made clear that N.Y. Crim. P. Law § 140.20 does not provide a private right of action under which plaintiff may sue. *Watson v. City of New York*, 92 F.3d 31, 36-37 (2d. Cir. 1996); *Ortiz v. City of New York*, 11-CV-7919, 2013 WL 5339156, at *3 (S.D.N.Y. Sept. 24, 2013) (Furman, J.), *aff'd*, 589 F. App'x 24 (2d Cir. 2014). Thus, Edward's and Asharafan's claims for excessive pre-arraignment delay under New York law are dismissed.

B. **Federal Law Claims**

Edward's and Asharafan's § 1983 claims for excessive pre-arraignment detention fail for a different reason. The Supreme Court has held a jurisdiction that arraigns a defendant "within 48 hours of arrest will, as a general matter, comply with the promptness requirement" of the Constitution. *Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991); *see also Bryant v. City of New York*, 404 F.3d 128, 138 (2d Cir. 2005) ("What is constitutionally required is that, except in

---

[4] Although the SAC does not identify any provision of state law as the source of the allegedly infringed rights, and Plaintiffs do not explicitly clarify their claim in their opposition papers, the Court assumes Edward and Asharafan intend to assert such claim under N.Y. Crim. P. Law § 140.20. *See* Defs.' Memo at 27; Pls. Opp. at 26 (discussing case citing N.Y. Crim. P. Law § 140.20).

extraordinary circumstances, the arrestee be given a hearing into probable cause for the arrest within 48 hours."). Although a delay of less than forty-eight hours can violate federal law "if the arrested individual can prove that his or her probable cause determination was delayed unreasonably," *Cty. of Riverside*, 500 U.S. at 56, the "burden of showing that the delay was unreasonable" is squarely on the plaintiff, *Mazza v. City of New York*, 98-CV-2343, 1999 WL 1289623, at *10 (E.D.N.Y. July 13, 1999) (Glasser, J.)

Edward was released after spending approximately 27.5 hours in custody, and Asharafan was held in custody for approximately 25.5 hours. Both detentions were within the forty-eight hour period and, therefore, presumptively reasonable. Neither Edward nor Asharafan has cited any evidence in the record to support finding the delay was unreasonable. "Examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake." *Cty. of Riverside*, 500 U.S. at 56.

Edward claims his delay was unreasonable because he was only charged with non-criminal traffic offenses, and he could have been issued a summons instead. Pls. Opp'n at 27. Under New York law, "a police officer may arrest a person for . . . [a]ny offense when he or she has reasonable cause to believe that such person has committed such offense in his or her presence." N.Y. Crim. P. Law. § 140.10(1)(a). While it may be true "[p]ublic policy arguments favor the issuance of 'universal summonses' (appearance tickets) where appropriate rather than arresting citizens where minor offenses are involved," *People v. Hazelwood*, 429 N.Y.S.2d 1012, 10141013 (Crim. Ct. 1980), it is indisputable police officers in New York have the option of arresting for even minor traffic violations, *see, e.g.*, *United States v. Scopo*, 19 F.3d 777, 785 (2d Cir. 1994). Thus, Edward's challenge of his arrest in arguing his pre-arraignment detention was

20

excessive is misplaced and does not meet the burden of showing the delay in his arraignment was unreasonable. *See Bryant v. City of New York*, 404 F.3d 128, 138-39 (2d Cir. 2005) (officers' decision to detain overnight disorderly conduct arrestees, rather than issuing desk appearance warrants authorized under state law, was not objectively unreasonable under Fourth Amendment).

As for Asharafan's claim, she argues her pre-arraignment detention was excessive because her arrest was unsupported by probable cause. Pls. Opp'n at 30. The probable cause argument goes to her false arrest claim, and cannot be equated with her detention, which at 25.5 hours, was presumptively reasonable. The purpose of the probable cause determination, which is made at the arraignment in New York, is to determine whether or not there was probable cause for the arrest. *See Bryant*, 404 F.3d at 138. Therefore, it is circular to argue the detention is unreasonable because the arrest lacked probable cause. The Court grants Defendants' motion as to Edward's and Asharafan's claims for excessive pre-arraignment detention under § 1983.

## IV.     Failure to Intervene (Fourth Cause of Action)

The Second Circuit has recognized "all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (citations omitted). Liability for failure to intercede will attach where the officer in question observes or has reason to know of the underlying wrongful conduct and had a "realistic opportunity to intervene to prevent the harm from occurring" but failed to do so. *Id.*

With respect to Plaintiffs' remaining constitutional claims—(1) Esperanza's and Asharafan's claims for false arrest; (2) Edward's claim for assault and battery; and (3) Esperanza's claims for excessive force and assault and battery—their related claims for failure to

21

intervene will also proceed.  To the extent Briggs raises a failure to intervene claim against the Individual Defendants, that claim fails—like his false arrest and excessive force claims—because he admits that none of the named defendants were in a position to prevent the alleged use of force against him.  Defs. Facts ¶ 26.

It is undisputed Skyers-Anderson, Lluka, Schmidt, and Kelley were at the scene during the alleged constitutional violations, and whether an officer can be held liable on a failure to intervene theory is generally a question of fact for the jury to decide.  *See Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1992); *see also Caceres v. Port Auth. of N.Y. & N.J.*, 06-CV-1558, 2008 WL 4386851, at *8 (S.D.N.Y. Sept. 24, 2008) (Koeltl, J.) ("Because there remain genuine issues of material fact as to whether the defendants violated the plaintiff's constitutional rights, there also remain genuine issues of material fact as to whether the defendants had a duty to intervene.").  Summary judgment is denied with respect to Esperanza's, Edward's, and Asharafan's failure to intervene claims.

## V.     Violation of Due Process (Seventh Cause of Action)

Plaintiffs Edward and Esperanza each set forth claims alleging that the City's confiscation of the Honda Civic constituted a deprivation of property without due process of law.  However, as noted previously, the Court deems Esperanza's due process claim abandoned.  With respect to Edward's due process claim, this Court grants Defendants' motion for summary judgment and dismisses the claim.

Defendants argue they are entitled to summary judgment on Edward's due process claim for three reasons:  (1) although NYPD seized the car, it is prepared to return it once Edward obtains the necessary release; (2) Edward must exhaust existing remedies under state law before pursuing a takings claim under the Constitution; and (3) Edward abandoned the vehicle when he

left it on the street without license plates, and ownership vested in the City because the value of the vehicle was less than $1,250.00 at the time of abandonment, pursuant to N.Y. Veh. & Traf. Law § 1224. Defs. Memo at 27-29. The Court is persuaded by Defendants' second argument and grants the motion on that ground.

"Deprivation of property by a state actor, whether intentional or negligent, does not give rise to a claim under § 1983 so long as the law of that state provides for an adequate post-deprivation remedy and the deprivation was the result of a 'random and unauthorized' act," rather than an established state procedure or practice. *Johnson v. City of New York*, 09-CV-4685, 2011 WL 1044852, at *12 (S.D.N.Y. Mar. 18, 2011) (Gardephe, J.) (quoting *Dove v. City of New York*, 99-CV-3020, 2000 WL 342682, at *2 (S.D.N.Y. Mar. 30, 2000) (Chin, J.) (collecting cases)); *see also Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006).

Edward has not alleged he was deprived of his property due to systemic violations, rather than a "random and unauthorized" act by the arresting officers, and there are multiple adequate post-deprivation procedures available to Edward. The Second Circuit has held "on numerous occasions that an Article 78 proceeding is a perfectly adequate post[-]deprivation remedy." *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881 (2d Cir. 1996) (citations omitted); *see Chepilko v. City of New York*, 06-CV-5491, 2012 WL 398700, at *11 (E.D.N.Y. Feb. 6, 2012) (Ross, J.) (citations omitted) (Article 78 proceeding is an adequate post-deprivation remedy if property is taken by the police and not returned voluntarily). Further, New York provides an adequate post-deprivation remedy in the form of state law causes of action for negligence, replevin, or conversion. *See Dove*, 2000 WL 342682, at *3 (citing *Mejia v. N.Y.C. Dep't of Corr.*, 96-CV-2306, 1999 WL 138306, at *4 (E.D.N.Y. Mar. 5, 1999) (Gleeson, J.) (availability of state law negligence, replevin, or conversion claims defeats § 1983

action for loss of property) and *Cook v. City of New York*, 607 F. Supp. 702, 704 (S.D.N.Y. 1985) (Conner, J.) (same)). Because Edward admittedly has not sought to exhaust the available post-deprivation remedies, Defendants' motion for summary judgment on Edward's due process claim is granted.

## VI.    Municipal Liability (Fifth Cause of Action and *Monell*)

### A.    *Respondeat Superior*

The doctrine of *respondeat superior* renders an employer vicariously liable for torts committed by an employee acting within the scope of his or her employment. *Beauchamp v. City of New York*, 771 N.Y.S.2d 129, 131 (2d Dep't 2004). However, "[s]ince the determination of whether an employee's actions fall within the scope of employment depends heavily on the facts and circumstances of the particular case, the question is ordinarily for the jury." *Id.* (citations omitted). With respect to the remaining claims for false arrest, excessive force, assault and battery, and failure to intervene, a reasonably jury could conclude such actions were taken to further the City's interest or to carry out law enforcement duties incumbent upon the officers. *See id.*; *Graham v. City of New York*, 770 N.Y.S.2d 92, 93 (2d Dep't 2003). Accordingly, the City's motion for summary judgment on Plaintiffs' *respondeat superior* claims is denied.

### B.    *Monell* Liability

Finally, Defendants seek to dismiss Plaintiffs' claim for municipal liability arguing Plaintiffs do not state a viable claim against the City and fail to establish the existence of a widespread City policy, custom, or practice that was the cause of a violation of a federally-protected right, as required under *Monell*. Defs. Memo at 30-31. Indeed, although the SAC broadly alleges deliberate indifference by the City in failing to train and supervise their officers,

in their memorandum in opposition, Plaintiffs appear to pursue only their municipal liability claim premised upon the alleged use of force by Lluka. *See* Pls. Opp'n at 50-52.

To prevail on a *Monell* claim, a plaintiff must show "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). A plaintiff can establish the existence of a policy or custom by demonstrating: (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policymaker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees. *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010) (Preska, J.) (collecting cases).

As the Supreme Court has cautioned, "deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citation and internal quotation marks omitted). Deliberate indifference under a failure to supervise theory has three requirements:

> First, the plaintiff must show that a policymaker knows to a moral certainty that her employees will confront a given situation. Second, the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation. Finally, the plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights.

*Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007) (internal quotation marks and citations omitted); *see also Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992).

"The operative inquiry is whether th[e] facts demonstrate that the policymaker's inaction was the result of conscious choice and not mere negligence." *Cash v. Cty. of Erie*, 654 F.3d 324, 334 (2d Cir. 2011) (internal quotation marks omitted). Thus, a failure to act "satisfies the policy or custom requirement only where the need to act is so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need." *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007). "An obvious need may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995).

Plaintiffs set forth a theory of liability against the City for failure to supervise or train that amounted to deliberate indifference. Plaintiffs proffer support for the *Monell* claim through (1) allegations regarding prior misconduct by Lluka contained in a civil rights lawsuit brought by two plaintiffs in 2010 that resulted in a settlement in 2014; (2) news articles regarding a highly-publicized incident in 2016 that involved Lluka; and (3) a 2016 civil rights lawsuit naming Lluka that was settled by the City in 2017. *See* Pls. Opp'n at 11-14, 51-52.

The fact that Lluka has been previously named in other civil complaints does not establish a City policy or practice of not taking remedial action to remedy constitutional violations, as required by *Monell*. Plaintiffs do not allege any specific facts regarding whether the City investigated or disciplined Lluka in response to the complaints of excessive force. *See Selvaggio v. Patterson*, 93 F. Supp. 3d 54, 79 (E.D.N.Y. 2015) (Garaufis, J.) ("[E]ven if these five varied allegations over the course of a ten-year-period were sufficient to put the City on notice of a constitutional problem, Plaintiff has failed to come forward with evidence to suggest

that the City did not meaningfully investigate the allegations; indeed, she has 'presented no evidence as to the municipality's response to any prior incident of misconduct.'" (quoting *Vann*, 72 F.3d at 1050)); *Walker v. City of New York*, 14-CV-808, 2015 WL 4254026, at *11 (S.D.N.Y. July 14, 2015) (Ramos, J.) (noting that "[e]ven if Plaintiff had shown an obvious need for more or better supervision by listing the numerous lawsuits and complaints, he has not stated any facts to show that the City has acted with deliberate indifference" where "he does not specifically claim that the City *failed to investigate* the list of lawsuits"). "Plaintiffs seem to proceed on the assumption that if a complaint . . . is filed against an officer, it follows *ipso facto* that he is guilty of a constitutional violation, a proposition [this Court] cannot accept." *Rasmussen v. City of New York*, 766 F. Supp. 2d 399, 409 (E.D.N.Y. 2011) (Cogan, J.).

Because Plaintiffs' allegations fail to establish a *Monell* claim, the Court grants the City's motion for summary judgment on that claim.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED in part and DENIED in part. The Court rules as follows:

1.      Defendants McKenzie and John/Jane Does 1-10 are dismissed from the case;

2.      Plaintiff Briggs has no outstanding claims against Defendants;

3.      Defendants' motion for summary judgment is DENIED with respect to the following claims, which will proceed to trial: (a) Esperanza's and Asharafan's claims for false arrest under § 1983 and state law; (b) Edward's claim for assault and battery under state law; (c) Esperanza's claims for excessive force under § 1983, and assault and battery under state law; (d) Edward's, Esperanza's, and Asharafan's related failure to intervene claims under § 1983; and

(e) Edward's, Esperanza's, and Asharafan's *respondeat superior* claims against the City; and

4.     Defendants' motion for summary judgment is GRANTED with respect to all other claims alleged against Defendants.

The Clerk of Court is directed to terminate the motion pending at ECF No. 68.


**SO ORDERED.**

s/William F. Kuntz, II

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: July 11, 2018
          Brooklyn, New York